HELLMAN v. STANARD.

1. SPECIFIC PERFORMANCE—REMEDY OF GRACE.

Specific performance is a remedy of grace and not a remedy of right, the test of whether or not it should be granted depending upon the peculiar circumstances of each case.

2. SAME—CONTRACT TO CONVEY REALTY—CLOUD ON TITLE—DELAY—TITLE INSURANCE.

Plaintiff was not entitled to specific performance of an agreement to sell real estate, which contained a provision that period for consummation of the sale did not expire until 10 days after delivery of the abstract of title or policy of title insurance by

REFERENCES FOR POINTS IN HEADNOTES
[1]   49 Am Jur, Specific Performance § 8.
[2]   49 Am Jur, Specific Performance §§ 40–42.

reason of vendors' failure to make delivery of either of such instruments, where it appears that plaintiff's agent had undertaken to, and did, obtain a policy of title insurance and plaintiff made no mention of an asserted cloud on the title until defendants expressed intention to cancel the contract due to plaintiff's delay in completing the transaction, and it appears plaintiff knew there was no such actual cloud on the title.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted June 11, 1954. (Docket No. 45, Calendar No. 46,007.) Decided September 8, 1954.

Bill by Loel R. Hellman against Harry C. Stanard and Evelyn K. Stanard for specific performance of agreement to sell real estate. Bill dismissed. Plaintiff appeals. Affirmed.

*Milton J. Maddin,* for plaintiff.

*Castelluci & Hird,* for defendants.

BUTZEL, C. J. Plaintiff, Loel R. Hellman, filed a bill for specific performance of a contract for the sale of land described as Lot 457, Greenwich Park Subdivision in Detroit. The defendants, Harry C. Stanard and Evelyn K. Stanard, husband and wife, the owners of the above-described land, on January 12, 1951, signed an agreement of sale pursuant to an offer by plaintiff. It in effect was an option. Following a full hearing, the lower court held that under the facts plaintiff had not presented a case wherein the court should grant the equitable remedy of specific performance. Plaintiff has appealed from the decree dismissing the bill of complaint.

On April 11, 1950, the city of Detroit filed notice by *lis pendens* of proposed acquisition of some 10 lots, including lot 457, in the vicinity of Cheyenne and St. Martins streets in Detroit, for parks and recrea-

tional purposes. On January 2, 1951, the common council of the city of Detroit entered an order discontinuing the proposed condemnation of lot 457 and the other lots contiguous thereto and by a letter dated January 10, 1951, notified defendants and other interested landowners of the discontinuance. Mr. Green, a co-owner of the Rose-Hill Realty Company of which plaintiff was at that time sales manager, owned several lots in the subdivision and had been active in opposing the proposed condemnation before the Detroit common council. Plaintiff was at that time familiar with the fact that Green owned lots in the area but in testifying stated that he could not recall whether he was at that time aware of the fact that Mr. Green's activities before the common council were successful and resulted in the discontinuance of the proposed condemnation. Shortly after January 2, 1951, plaintiff sent his agent, Mr. Sweetwine, a salesman for Rose-Hill Realty Company, to see defendants in order to arrange for the purchase of lot 457. As a result of negotiations between Sweetwine and defendants the agreement of sale dated January 12, 1951, was signed by plaintiff and the defendants. The pertinent sections of that agreement read as follows:

"6. As evidence of title, seller agrees to furnish purchaser as soon as possible, a complete abstract of title and tax history, certified to a date later than the acceptance hereof, and issued by the Burton Abstract & Title Company. In lieu thereof, a policy of title insurance issued by said company, bearing date later than the acceptance hereof, and guaranteeing the title in the condition required for performance of this order, will be accepted.

"7. If a marketable title can be conveyed, the sale shall be consummated within 10 days after delivery of such abstract or policy. If an abstract is furnished and an objection is made to title, and notwithstand-

ing, a Burton Abstract & Title Company policy of title insurance, insuring the title in the condition required by this offer, can be obtained, the sale shall be consummated within 10 days after delivery of such policy; however, if sale is to be consummated in accordance with paragraph 2, then the closing shall be governed by the time required for obtaining a mortgage."

Mr. Stanard testified that he supplied Mr. Sweetwine with his old title policy in order to facilitate the obtaining of the title policy provided for in the agreement. Sweetwine then told Stanard that he would obtain the new policy. A title commitment was ordered by Rose-Hill Realty Company from the Abstract and Title Guaranty Company on January 15, 1951, and on January 22, 1951, was mailed or delivered to the Rose-Hill Realty Company. This title commitment stated that title to the premises was vested in Harry C. Stanard and Evelyn K. Stanard, his wife, subject to various reservations of which only the following is pertinent:

"7. *Lis pendens* register #42667 recites that land in question owned by titleholders as set forth above, is in the process of being acquired for 'parks and recreational purposes;' suit to that effect is now pending in recorder's court for the city of Detroit, under #2064."

According to a letter from Stanard to plaintiff's counsel, dated February 3, 1951, Sweetwine and plaintiff's counsel had called Stanard in regard to the city and county taxes on the property and they were promptly taken care of. No mention whatsoever was made up to that date or until February 14th of the cloud appearing in the title commitment in regard to the pending condemnation proceedings. Notice of the discontinuance of *lis pendens* was recorded January 23, 1951.

Mr. Stanard testified that he had informed plaintiff's agent, Mr. Sweetwine, that he wanted to close the deal as rapidly as possible in order to obtain funds that he urgently needed to pay for material purchased for his business on January 10, 1951, billed as payable February 10, 1951; that Sweetwine informed him that it would take 10 or 12 days to obtain a title commitment, and that the sale would be completed about 10 days after that; that after February 10, 1951, when the necessity for the money had passed and other arrangements had been made to pay the bill, he decided to call the whole deal off. Therefore, on February 14, 1951, Stanard notified plaintiff that the deal was off and that he would not then sell the property.

The lower court dismissed plaintiff's bill of complaint after making the following findings: (1) Plaintiff knew of the resolution of the common council withdrawing the proposed condemnation plans before he sent Sweetwine to negotiate with defendants for the purchase of their property; (2) Mr. Stanard showed Sweetwine the letter he had received informing him of the common council's action; (3) Mr. Sweetwine told Mr. Stanard that he would take care of the matter of securing the title policy and that plaintiff, therefore, through Sweetwine as his agent, in effect, waived the contractual obligation of paragraph 6 upon defendants of securing the title policy and assumed that duty; (4) After receiving the title commitment plaintiff at no time asserted that the proposed condemnation proceedings constituted a cloud on title but made inquiry of plaintiff only in regard to taxes on the premises and said nothing concerning the asserted cloud because plaintiff knew that the common council had discontinued the condemnation proceedings; (5) 23 days after the title commitment had been mailed to plaintiff, and only . after defendants had told him that the deal

was off, plaintiff asserted that the proposed condemnation proceedings as indicated on the title commitment constituted a cloud on the title even though he well knew at the time that the proceedings had been discontinued. The court held that under the circumstances the plaintiff could not wait 20 days to make up his mind whether he wanted the land with the asserted cloud on the title merely because he eventually decided to take the land under the title as such appeared in the title commitment.

This case differs from the ordinary situation where there is a simple offer and acceptance. The agent of plaintiff with the latter's full knowledge took charge of the entire negotiations. Plaintiff and his agent must have known of the discontinuance of the condemnation proceedings through Mr. Green, their employer, or at least after the letter from the common council had been shown to the agent by Mr. Stanard. In the latter regard the defendant's testimony is uncontradicted.

There was no showing that plaintiff's agent who assumed the duty of obtaining the title commitment with full knowledge of the prior discontinuance of the condemnation proceedings made any effort to have such discontinuance entered on the title commitment. Plaintiff used the fact that the discontinuance of condemnation was not entered on the title commitment as a reason or subterfuge for delay in completing the sale although, through the knowledge of his agent, plaintiff knew that the defendants requested that the deal be closed as rapidly as possible. Defendants waited over 20 days and then notified plaintiff that they would no longer sell. It was only at that time that plaintiff asserted that there was a cloud on title; such objection to title was not well founded and in actuality did not exist and had not existed from the time plaintiff entered into the negotiations for the purchase of the lot.

Specific performance is a remedy of grace and not a remedy of right, and the test of whether or not it should be granted depends upon the peculiar circumstances of each case. See *Slater* v. *Edgley,* 328 Mich 589, and the cases therein cited.

Plaintiff asserts that the contractual obligation of defendants to furnish an abstract of record title or a title insurance policy was never fulfilled, and that evidence of title in any other manner was not acceptable under the express provisions of the contract. *Ogooshevitz* v. *Arnold,* 197 Mich 203. Plaintiff therefore contends that since he has not been furnished with an abstract of title or a policy of title insurance by the defendants, as provided for in the agreement, he may elect to take title with the cloud thereon as appears in the title commitment since the time period for the consummation of the sale does not expire until 10 days after delivery of the abstract or policy of title insurance. In so arguing plaintiff fails to acknowledge that it was his agent who assumed the duty to obtain the policy of title insurance for defendants; that defendants relied upon that representation of plaintiff's agent and made no efforts to secure an abstract or a policy of title insurance; that plaintiff made no mention of the now asserted cloud on title until defendants expressed their intention to cancel the contract due to plaintiff's delay in completing the transaction. We agree with the ruling of the trial judge that the plaintiff has not presented a case justifiably invoking the aid of a court of equity.

The decree dismissing the bill is affirmed, with costs to the defendants.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.