**STEPHEN SLOAN REALTY COMPANY, a New York Corporation, Plaintiff,**

v.

**555 SOUTH WOODWARD ASSOCIATES, Bruce H. Miller, James O. Thompson, Individually and d/b/a 555 South Woodward Associates, an unregistered Michigan Co-Partnership, Lawrence Gechter, Herbert Sillman and Bruce Thal, jointly and severally, Defendants.**

Civ. A. No. 83 1555.

United States District Court, E.D. Michigan, S.D.

Feb. 6, 1985.

Jonathan Miller, Southfield, Mich., for plaintiff.

Thomas J. Tallerico, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiff Stephen Sloan Realty Corporation has filed a complaint, alleging breach of contract, breach of fiduciary duty and intentional interference with contractual relations, against 555 South Woodward Associates (S.W. Associates) and its representatives Bruce Miller and John Thompson, as well as against Lawrence Gechter, Herbert Sillman and Bruce Thal, who are professional accountants. The action arises from a March 22, 1982 Agreement of Sale into which plaintiff entered with S.W. Associates for plaintiff's purchase of an apartment, office and commercial development called the 555 South Woodward Buildings.

Section 18(c) of the agreement allowed plaintiff until May 21, 1982 to obtain a written commitment on a mortgage. The same paragraph provided that if plaintiff should fail to acquire a mortgage commitment by May 21, 1982, the contract would be terminated but plaintiff would still retain a right of first refusal for one hundred twenty days following termination.

The deadline for plaintiff's acquisition of the mortgage commitment was extended in writing on two occasions. On May 25, 1982, S.W. Associates gave plaintiff a written extension to June 7, 1982; and, on June 11, 1982 the deadline was extended to July 15, 1982. These extensions were made without reference to plaintiff's original right of first refusal.

Plaintiff was unable to obtain a written commitment by July 15, 1982. However, negotiations between plaintiff and representatives of S.W. Associates continued. In August, 1982 plaintiff engaged a New York law firm to prepare a draft agreement for further negotiations with S.W. Associates at a September meeting. On September 14, 1982, plaintiff had that meeting with S.W. Associates' representatives in Detroit. The parties were unable to reach an agreement on that date and there were no further negotiations, thereafter. In February of 1983, defendants Gechter, Sillman and Thal acquired their interest in the property. A few months later, plaintiff brought suit in this court for breach of his right of first refusal.

## PROCEDURAL HISTORY

On August 29, 1983, this court heard argument on defendants' motion to dismiss or for summary judgment. For reasons stated on the record, the court granted defendants' motion as to Count II, which claimed breach of a fiduciary duty. But the court denied the motion as to the two remaining counts, because plaintiff, by affidavit, declared that at the last meeting of these parties, in September of 1982, there had been an oral agreement to extend the right of first refusal. In his affidavit plaintiff stated that defendant Miller attended the September meeting and that plaintiff and he orally agreed that the termination date and the right of first refusal would be extended. Defendants denied that any such agreement was made. The court determined that a genuine issue of material fact had been raised as to whether or not an agreement to extend the right of first refusal had been made, and that the remaining two counts must therefore be tried. The court did not grant the motion on the basis of the Statute of Frauds, which defendants also argued, either.

Now that discovery has been completed, defendants have filed another motion for summary judgment on those same remaining counts of the complaint. Defendants contend now that although plaintiff had stated in his earlier affidavit that an agreement had been made, at a subsequent deposition plaintiff's testimony about the "extension" meeting made it clear that *no* agreement was made. At the deposition, plaintiff indicated that he had stated at the September, 1982 meeting, at his departure, that the option was still in existence and

that S.W. Associates' representatives should notify him if another deal developed. Plaintiff acknowledged that no one had responded to his remark. No other persons present at the meeting recalled that the subject of the right of first refusal has been mentioned at all. Defendants say that, based upon these undisputed facts, they are entitled to summary judgment as to Count I. No agreement can be attributed to the September 14, 1982 meeting.

Defendants also claim that they are entitled to summary judgment on Count III, in which plaintiff alleges that defendants Sillman, Gechter, and Thal interfered with contractual relations between plaintiff and S.W. Associates. Defendants argue that since the original agreement automatically terminated on July 15, 1982, the option expired at the latest in September of 1982, and defendants did not acquire the buildings until February 24, 1983, they could not have interfered with plaintiff's contract. Defendants could not have usurped plaintiff's opportunities or engaged in unfair competition with plaintiff for the same reason.

Additionally, defendants suggest that, should the court find that the right of first refusal did not expire until one hundred twenty days after July 15, 1982, the right was terminated by implication on November 12, 1982. And the court notes that even if the extension was agreed upon as plaintiff claims on September 14, 1982, it would have expired by its own terms one hundred twenty days later—and the sale to defendants on February 24, 1983, was *one hundred sixty three days later.*

Plaintiff's position, nevertheless, is that as a consequence of his July 14th meeting with Miller and attorneys in New York, a lengthy proposed agreement was prepared in August for him to present, and the parties met again in September. According to plaintiff, when he and S.W. Associates failed to reach an agreement on September 14, 1982, the agreement was terminated on that date and he retained a right of first refusal until January 14, 1983. He contends that the February sale violated his

option because Miller had *decided* to sell the property to the codefendants at some time before the option expired in January.

Plaintiff claims that defendants' motion should be denied because there are substantial factual issues regarding the agreements to extend the March agreement; as to whether the entire contract, including the right of first refusal, was extended; and whether Gechter, Sillman and Thal interfered with contractual relations. Plaintiff contends that the entire contract was extended, and that he had relied upon the right of first refusal to protect his creative, unique, and inventive financing concepts from seizure by others. He further claims that defendants Gechter, Sillman and Thal knew about the right of first refusal because they insisted that S.W. Associates include a clause in their contract that S.W. Associates would idemnify and hold them harmless from plaintiff's potential claims of right of first refusal. Moreover, he claims that the accountant defendants did in fact usurp his unique financing concepts.

■ The court finds that there are no genuine issues of material facts remaining in this case to warrant a trial. First, there is no issue as to whether the option agreement was extended to February 24, 1983, the date on which defendants entered their sale agreement. It was not, even assuming plaintiff's gloss on the facts. "A party opposing the motion [for summary judgment] must present facts of a substantial nature, and may not rely on conclusions of law...." The mere hope that evidence may surface is not sufficient to have a trial. *Provenzino v. Merchants Forwarding*, 363 F.Supp. 168, 175 (E.D.Mich.1973). It is evident that plaintiff recognized that the contract was terminated on July 15, 1982 because he wrote defendant Miller on July 19, 1982 and requested that plaintiff's counsel and defendant Thompson extend the contract for another fifteen days. The mere fact that defendant S.W. Associates agreed to meet with plaintiff in August and in September and did meet with plaintiff during those months, without more, does not indicate that the contract was still en-

forceable. The undisputed facts of record establish that the parties' contract was not extended beyond July 15, 1982, and plaintiff was unable to proffer any evidence to the contrary at the hearing before this court. The consent of both parties to a contract is needed to modify that contract. A meeting of the minds is a prerequisite to modification after an agreement has been made. *Wells v. 10–X Manufacturing Co.,* 609 F.2d 248, 256 (6th Cir.1979). The statement of one party that a contract is still in force does not constitute an extension agreement. Moreover, as stated before, even an extension of plaintiff's option for one hundred twenty days beyond September 14th does not reach the February 24th breach of which defendants are accused. The extension language does not preclude *thoughts* of another possible sale.

Paragraph 18(c) of the March 22, 1982, contract provided that:

> within sixty (60) days after the date that the Seller executes this Agreement, the Purchaser shall obtain a written commitment from the holder of the Mortgage ... The failure of the Purchaser to obtain such a commitment shall terminate this Agreement ... In the event Seller receives another offer to purchase within one hundred twenty (120) days after termination of this Agreement ..., Seller shall be required to notify Purchaser....

Plaintiff has not come forward with affidavits or other source documents to raise any issue of fact that an offer to purchase was received during the term of his option. His contract was not, therefore, breached.

 Plaintiff's claim of interference with contractual relations must also fail. Intentional interference with another's contractual rights is an actionable tort. *Marwil v. Baker,* 499 F.Supp. 560, 572 (E.D. Mich.1980). To prevail on such a theory, the plaintiff must show that "a contract existed, that it was breached, that the [defendants] instigated the breach and that [they] did so without justification." *Trepel v. Pontiac Osteopathic Hospital,* 135 Mich. App. 361, 374, 354 N.W.2d 341 (1984); *Derosia v. Austin,* 115 Mich.App. 647, 653–54, 321 N.W.2d 760 (1982). Defendants Gechter, Sillman and Thal undisputedly secured rights to the buildings on or about February 25, 1983, long after plaintiff's contract with S.W. Associates had been terminated. The undisputed facts support that argument, whether the option expired on July 15, 1982, or September 15, 1982, or whether it was revived for another one hundred twenty days thereafter.

 Finally, plaintiff's claim that defendants Gechter, Sillman and Thal usurped his unique financing concepts must, if indeed it is a claim separate and apart from the others, fail. To protect his unique financing concepts, plaintiff has stated that he negotiated the one hundred twenty day right of first refusal. Once that period had expired, however, he cites us to no law which would prohibit defendants from using concepts which he might have put on the table. Moreover, the contract which the defendants later entered undisputedly was *not* a reiteration of his unsuccessful, allegedly unique, ideas. And finally, the ideas to which plaintiff has claimed title include at least two (condominium conversion and use of the transaction as a tax shelter) which are by no means unique, nor were they in 1982 or February of 1983.

IT IS HEREBY ORDERED that defendants' motion for summary judgment as to Counts I and III of the complaint is granted and plaintiff's complaint be and hereby is dismissed.

IT IS SO ORDERED.