BOWKUS v LANGE

Docket No. 147128. Submitted July 7, 1992, at Grand Rapids. Decided October 20, 1992, at 9:15 A.M. In lieu of granting leave to appeal, the judgments of the circuit court and the Court of Appeals are reversed, the claim for specific performance is reinstated and the cancellation of the notice of *lis pendes* is vacated, 441 Mich 929.

Raymond Bowkus and others brought an action in the Chippewa Circuit Court against Gary W. Lange and others, seeking specific performance of a sale of a parcel of realty to the plaintiffs pursuant to an option. The court, Nicholas J. Lambros, J., granted summary disposition for the defendants, ruling that there were no genuine issues of fact regarding the plaintiffs' failure to exercise timely their right of purchase and to comply with other provisions of the option agreement, and that the defendants therefore were entitled to judgment as a matter of law. The plaintiffs appealed.

The Court of Appeals *held:*

1. An option must be exercised in strict compliance with the time limitations and other conditions established in the option agreement.

2. An option is converted into a binding contract for the sale of the subject property, and the optionee may seek specific performance of the sale, upon the optionor's unequivocal acceptance of the optionee's performance of the conditions of the option.

3. In this case, the trial court properly granted summary disposition for the defendants. The plaintiffs failed to establish that they exercised, attempted to exercise, or were in a position to exercise their right within the time limits and in strict compliance with the terms of the option agreement.

Affirmed.

REFERENCES

Am Jur 2d, Contracts §§ 72-74, 84-85; Specific Performance § 145; Vendor and Purchaser §§ 27-49.

Timeliness of notice of exercise of option to purchase realty. 87 ALR3d 805.

Time specified in real-estate contract for giving notice of exercise of option to purchase as of essence. 72 ALR2d 1127.

1. CONTRACTS — OPTIONS — EXERCISE — ACCEPTANCE — TIME LIMITS.
   An exercise or acceptance of an option must comply strictly with the time limitations set in the option agreement.

2. SPECIFIC PERFORMANCE — OPTIONS.
   An optionee who fails to comply strictly with the terms set for the exercise of an option and to secure the optionor's acceptance of the optionee's performance cannot prevail in an action for specific performance.

*Miller, Johnson, Snell & Cummiskey* (by *David J. Gass* and *David M. Buday*), for the plaintiffs.

*Brown & Brown* (by *Prentiss M. Brown, Jr.,* and *Charles M. Brown*), and *Thomas J. Veum,* for the defendants.

Before: DOCTOROFF, C.J., and REILLY and JANSEN, JJ.

PER CURIAM. Plaintiffs appeal, by leave granted, a Chippewa Circuit Court order granting defendants' motion for partial summary disposition of a claim for specific performance of a real estate transaction and ordering cancellation of a lis pendens filed against the property. Plaintiffs claim that the court incorrectly granted the motion for summary disposition because there existed a genuine issue of material fact with regard to whether they were able to perform the sale on the scheduled closing date and whether defendants agreed to an extension of that closing date. We disagree and affirm.

This action arises out of the aborted sale of a piece of property that was being used as a landfill. Plaintiffs John and Raymond Bowkus were in the medical-waste disposal business and were made aware of the availability for sale of the property commonly referred to as the Rudyard Landfill. Plaintiffs allege that they hired defendant Gary

W. Lange and his law firm to set up a corporation that would purchase the landfill. Thereafter, a corporation called Wasteq International, Ltd., was formed for the sole purpose of purchasing the landfill. Articles of incorporation naming Raymond and John Bowkus as incorporators were filed with the Michigan Department of Commerce.

On March 7, 1991, a letter was sent to defendant Lange from counsel for defendants Constance and Albert Mattson. The Mattsons owned defendant Superior Sanitation, Inc., which owned and operated the Rudyard Landfill at that time. The letter stated that Superior Sanitation would grant plaintiffs an option to purchase the Rudyard Landfill. The letter recited a number of conditions with which plaintiffs had to comply in order to exercise the option. In addition, the letter contained twelve conditions that had to be fulfilled in the event that plaintiffs wished to exercise the option and purchase the property.

There is limited factual development in this case because discovery has not been completed. Most of plaintiffs' support in defense of the motion comes by way of the affidavit of Raymond Bowkus. In the affidavit, Bowkus averred that plaintiffs were ready and willing to perform by the scheduled date. On May 29, 1991, plaintiffs sent defendants a letter stating that it was their intent to exercise the option to purchase as provided in the March 7, 1991, letter. The May 29 letter indicated that some conditions regarding financing had to be cleared up and that there would likely be a delay of forty-five to ninety days before closing could occur. No response from defendants is included in the record and, on appeal, defendants contend that no response was necessary.

Plaintiffs pursued financing and commissioned engineering studies to insure that the landfill was

operable within the parameters of the law. However, plaintiffs candidly admit that they did not comply with the twelve purchase conditions by June 15, 1991. After the closing date passed, but before defendants notified plaintiffs that the transaction would not be completed, defendant Lange allegedly approached Raymond Bowkus to induce him to sell the majority of shares in Wasteq to defendant Anderson. Bowkus alleges that he was contacted by Lange on at least three occasions to discuss the possibility of acquiring Wasteq International's interest in the Rudyard Landfill for defendant Anderson, but each time Bowkus refused the offers.

According to Bowkus, on July 19, 1991, he received a phone call from Ralph Gregory, a partner in Wolverine Venture Capital Group, Ltd., informing him that the property had been sold to a third party. Gregory and his company are in the business of financing viable commercial projects and intended to lend their support to plaintiffs for the Rudyard Landfill project. Plaintiffs submitted an affidavit by Gregory stating that he made a number of trips to the landfill and various county offices in preparation for the purchase of the property. Gregory also stated that he received a phone call informing him that the property had been sold. Gregory contacted defendant Albert Mattson to find out what had transpired, but Mattson was unwilling to speak with him about the matter.

Thereafter, plaintiffs received confirmation that the property had been sold to a group of investors, including defendants Anderson and Anderson Enterprises. Plaintiffs instituted this action in Chippewa Circuit Court, claiming legal malpractice, fraud, and breach of contract. This appeal is limited to the trial court's summary disposition of the claim for specific performance pursuant to MCR

2.116(C)(10), and the subsequent order canceling the notice of lis pendens.

Plaintiffs first argue that the trial court erred in granting defendants' motion for summary disposition. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for the claim asserted. *Meretta v Peach,* 195 Mich App 695; 491 NW2d 278 (1992). Once the moving party presents documentary evidence to support its motion, the responding party is saddled with the burden of showing that there exists a genuine issue of material fact. *Parpart v Detroit,* 194 Mich App 561; 487 NW2d 506 (1992). The responding party must set forth specific facts that show there is a genuine issue in dispute, and must do so through documentary evidence, rather than through mere allegations in the pleadings. *Id.* After drawing all inferences in favor of the responding party, the court must determine whether it would be impossible for the claim asserted to be supported by evidence at trial. *Id.* If there is a possibility that a record might be developed that leaves open an issue of material fact upon which reasonable minds might differ, the motion should be denied. *Winklepleck v Michigan Veterans' Facility,* 195 Mich App 523; 491 NW2d 251 (1992). Courts are liberal in finding a genuine issue of material fact. *Meretta, supra* at 533.

In this case, the trial court concluded that there was no genuine issue of material fact because plaintiffs failed to perform by the closing date and that it would not have been possible for plaintiffs to do so. We agree.

As a general rule, an option contract is strictly construed and the time for performance is of the essence. *Brauer v Hobbs,* 151 Mich App 769, 777; 391 NW2d 482 (1986); *Bennett v Eisen,* 64 Mich

App 241, 246; 235 NW2d 749 (1975); 77 Am Jur 2d,
Vendor and Purchaser, § 42, p 223. An option is a
mere offer that may ripen into a binding bilateral
contract upon a seasonable acceptance of the
terms recited therein. *LeBaron Homes, Inc v Pontiac Housing Fund, Inc,* 319 Mich 310, 315; 29
NW2d 704 (1947). Acceptance of the option must
be in agreement with the terms proposed and the
exact thing offered. *Id.* Similarly, the option must
be exercised in strict compliance with the time
limitations established by the option agreement.
*Id.*

In addition to demonstrating a valid, enforceable
contract, the party requesting specific performance
must show that he fulfilled the terms of the contract by performing or offering to perform, or that
he is ready, willing, and able to perform the
contract in its entirety. *Derosia v Austin,* 115 Mich
App 647, 652; 321 NW2d 760 (1982); 71 Am Jur 2d,
Specific Performance, § 60, p 88, and § 145, p 188.
The decision to grant or deny specific performance
lies within the discretion of the trial court. *Derosia, supra* at 652. In order to be entitled to the
remedy of specific performance of an option contract, the option must be accepted unequivocally
in order to convert the option into a binding
contract for the sale of the subject property. 71
Am Jur 2d, p 188. A party's inability or refusal to
perform the contract when the performance is due
will be fatal to the party's specific performance
claim. *Id.*

Our review of the pleadings, documentary evidence, and all inferences drawn therefrom convinces us that the trial court properly granted
summary disposition in this case. Plaintiffs failed
to demonstrate that there was a genuine issue of
fact concerning their ability to perform on the
date established. The option agreement contained

twelve provisions governing the sale of the property, none of which plaintiffs performed on or before the date set for closing. Further, plaintiffs failed to come forward with documentary evidence sufficient to rebut the claim that there was no genuine issue of material fact. In defense of the motion, plaintiffs merely submitted an extensive affidavit containing conclusory statements regarding their ability to perform the contract. We have held that where an affidavit offered in defense of a motion for summary disposition under MCR 2.116(C)(10) is couched in conclusory language and is unsupported by underlying factual development, the affidavit alone will be insufficient to create a genuine issue of material fact. *Jubenville v West End Cartage, Inc,* 163 Mich App 199, 207; 413 NW2d 705 (1987).

The trial court found, and we agree, that it would have been impossible for plaintiffs to develop a record proving that they could have performed on the scheduled closing date. Plaintiffs submitted no objective documentary evidence of loan commitments or other verification of the funds necessary to comply with the terms of the purchase agreement. Plaintiffs further failed to submit objective evidence that they agreed to assume Superior Sanitation's financial commitments to the Michigan Department of Natural Resources as required by the terms of the agreement. Plaintiffs did not submit any evidence that they intended to comply with the provision that required them to pay Rudyard Township for improvements on the access road to the landfill. In short, plaintiffs failed to come forward with any documentary evidence that could be construed to raise an issue of material fact with regard to their ability to perform the contract on the date specified.

Plaintiffs contend that they exercised the option

by complying with the four conditions before the date set for expiration of the option. While this may be true, plaintiffs still failed to tender full performance before the expiration of the offer to purchase and accordingly did not fulfill this prerequisite to sustain an action for specific performance.

Regarding plaintiffs' assertion that defendants extended the closing date, we agree with the trial court that this assertion is related to the claim of breach of contract and that the proper course of action is to permit further factual development in that regard. Assuming, without deciding, that the date had been extended, plaintiffs still are not entitled to specific performance because they have failed to tender performance or demonstrate that they had the ability to do so within the time agreed upon. As the trial court correctly noted, there was no tender of performance, or proof of an ability to do so, even up to the date set for the hearing on the motion for summary disposition. Accordingly, we conclude that the question whether the closing date was extended is irrelevant to the disposition of the specific performance claim and leave that question to further factual development as it relates to plaintiffs' claim for breach of contract.

Because of our disposition of the first issue in this matter, it is unnecessary for us to address in detail the question whether the trial court erred in ordering cancellation of the lis pendens. We conclude that the court did not err in so doing.

Affirmed. Defendants may tax costs. We do not retain jurisdiction.